The case for argument is 16-2721 Idemitsu Kosan Co. Ltd. v. SFC Co. Ltd. Idemitsu Kosan Co. Ltd. v. SFC Co. Ltd. May it please the Court, good morning, Your Honors. In its institution decision, the Board found that the petitioner, SFC, failed to demonstrate that the combination of compounds in the claims of Idemitsu's patent is anticipated by the Eric Cone reference. Because Eric Cone doesn't disclose the combination of compounds that SFC selected from Eric Cone's disclosure, SFC was required to show something more, prove that the combination of compounds would have been obvious. That is, SFC was required to prove that even though a skilled artisan could not immediately envisage the particular combination of compounds from Eric Cone, a skilled artisan nevertheless looking at Eric Cone would select a particular group of whole transport compounds together with a particular group of electron transport compounds for combination in a light emitting layer. However, there is no evidence... Are you saying that the Board was bound by its institution decision and could not, with a more fully developed record, view Eric Cone differently? It was entitled to view Eric Cone differently, but to present or rely on different bases for obviousness to which there was no opportunity to reply. In that sense, the Board was bound to at least state what the grounds of obviousness were. And in this case... But really, let's talk about whether there was an opportunity to reply. So you agree that the two compounds, the HT and ET, are disclosed in Eric Cone, right? Your whole point is that there's also this ratio that was necessary. You can get by selecting different components to a subgroup of whole transport compounds in Eric Cone that correspond to the compound A in the claims of the MNC patent. And you can select particular groups to get to a group of electron transport compounds that correspond to component B in claim one. But there's no disclosure of the particular group together. So you argue in your response that Eric Cone actually teaches away, then, from just using the compounds without having the ratio, the energy ratio. Exactly. So as a precondition to selecting a particular whole transport compound to go together with a particular electron transport compound, it's necessary that they satisfy an energy gap relationship where the energy gap of the whole transport compound is lower than the energy gap of the electron transport compound. So are you saying that they were not allowed to respond to your teaching away argument by saying, no, it doesn't actually teach away because that's not a necessary requirement of the claims. So it doesn't teach away from the invention. Well, either they responded by, they didn't respond by saying that it doesn't. Well, I mean, they didn't respond by, I guess I would contrast the response with providing evidence in the first instance. So because they never addressed this aspect of the Eric Cone reference, this electron or the energy gap requirement, when they get later on, they can, they just make a bald assertion that all of them would, all the whole transport compounds would be expected to be less than all the electron transport compounds. So you're saying it was their job to anticipate a teaching away argument in their petition and say, and by the way, it doesn't teach away? It's not really anticipating. I mean, the very core requirement of the Eric Cone reference is that the whole transport compound and the electron transport compound satisfy this energy gap relationship. So by leaving unaddressed this issue in their original petition, this was their chance to provide evidence and prove that that was the case. Right. Well, it might be an important aspect of what the Eric Cone reference was talking about. But the question is, what did the Eric Cone reference disclose as it relates to the claimed invention? And the claimed invention had nothing to do with the energy gap, right? Certainly. But if Eric Cone only suggests things that satisfy the energy gap relationship, and it teaches away from the things that do not satisfy the energy gap. But I guess that's part of the debate. I mean, I understand you want to focus on the energy gap discussion in Eric Cone, but the board read Eric Cone more broadly as teaching the notion that you could combine any Formula 1 compound with any Formula 5 or Formula 6 compound. And so the board focused on that. Then I understand in response, you wanted to hone in on the energy gap or you wanted to hone in on example 4. And in the end, the board concluded, well, those things don't detract from the broader teaching that Eric Cone suggests this combination of a Formula 1 with a Formula 5 slash 6 compound. But I guess the problem is how could... And so then we're kind of left with, all right, so we have to give some deference to the board's reading of the reference and explanation on why it didn't find your counter-arguments ultimately persuasive. So I think that the board didn't merely... It's not that they found our counter-arguments to be not persuasive. That conclusion that this reference generally suggests combinations of electron transport compounds and whole transport compounds. I think the board referred to it as a Formula 1 compound with a Formula 5 or Formula 6 compound. But when the board is referring to that combination, it's just based on what they call this general proposition of putting together whole transport compounds and electron transport compounds. Well, but there's two different concepts here. One is, does it create a light-emitting layer? And does it create a light-emitting layer with the added durability and heat resistance that Arakani says would be preferable? But you concede that what they're saying is that you put these compounds together and they would create a light-emitting layer, right? Well, if you look at comparative example for 4, for example, in the Arakani reference, it does emit light. But to say that Arakani suggests the thing that it's distinguishing over is not looking at the Arakani reference as a whole. So Arakani is not the first... Our role, or the fact finder's role, is not to necessarily read any particular prior art reference to define what that particular author of that prior art reference really, really cares about. It's more about trying to understand what was known in the art at the time. And the prior art reference serves as evidence of what was known in the art. And so what was known in the art was whatever is disclosed in that reference, including the fact that example 4, maybe not Arakani in particular's preferred embodiment, nevertheless produces light. And that was known in the art. So I think there has to be a distinction between what is in the art and what is suggested by the art. So this is an obviousness assertion as to unpatentability. So if we look at the reference as a whole, if the parts that are comparative, if the parts that are disparaged can't be said to be taught away from, I mean, it renders the whole concept of teaching away meaningless. So of course, whenever a reference discloses something that it disparages, it does disclose it. It's there. But that doesn't lead to the conclusion that it suggests it. No, but teaching away is more than a description of what's more desirable or less desirable. Teaching away has to be something more than that. It teaches away because it indicates that the combination would be problematic. And in this case, that's exactly what the language is. No, it doesn't say the combination doesn't create a light emitting layer. It says that the combination doesn't create a light emitting layer. It may not create the light emitting layer with the heat resistance and other positive properties. So, but again, just the comparative example for literally says that it's problematic in practical use when you use the different energy gap levels. So I understand what you're saying, but the only way that you would come to focus on just looking at the reference for a baseline teaching, including the prior art and the comparative examples, the only way you come to the conclusion where you're looking for that is if you start with our claims and then say, oh, well, the claims only require light emission. So I don't need to go... That is what we have to be looking at. We have to be looking at what is disclosed via the claimed invention. I think that's putting the cart before the horse, though. So the reference suggests what it suggests. Now, when you figure out what the reference suggests, you can look at my claim and say, well, the claim doesn't require that, whatever the extra feature is. So it was enough for it to have suggested what it suggested. But if the reference doesn't suggest the combination beforehand, going back to my claim after you've discovered that it doesn't suggest the combination and then saying, well, it didn't have to suggest the combination because the claim doesn't require that. So I think, I understand that what is suggested is compared to what is in the claim. But what is in the claim is not the precondition to determining what the scope of the teachings are. So if you look at the claim first and realize that you don't need to have this energy gap relationship, that's not a license to go hunting around in the parts that are in the prior art that's distinguished over or to hunt around in the comparative examples, which are problematic. What about all the cases that we have that say that evidence concerning teaching away must relate to and be commensurate in scope to the claims at issue? The evidence must be commensurate in scope to the claims at issue. Not to what the prior art might have wanted to accomplish, but to what your claims claim. Right. But in this instance, we're talking about the burden of petitioner to show what was suggested by the reference. So if I argue that you teach away from my claim, the argument isn't that the reference teaches away from my claim. The argument is that the reference doesn't teach this general, it doesn't suggest these general combinations. So there haven't been any, there's no proof or there haven't been any discussions about whether or not what's claimed satisfies the energy gap relationship. The issue is whether in view of this energy gap relationship, what would you conclude about what Eric Conney suggests? I'm creeping into my rebuttal time. Yes, why don't we hear from the other side. Morning. I'm Blosser Roy of Austin and Byrd and with me today is Beth Graver, also of our firm, on behalf of SFC Co Ltd, the petitioner in the proceeding below. Contrary to Mitsou's arguments, the board's decision is based on evidence and reasoning that was disclosed and consistent with the positions that were presented by SFC from the outset of the proceedings. Well, it really is slightly different from the argument that you made, right? You argued that every combination would result in the energy gap that was described. It's slightly different. Your Honor, our position fundamentally was that the Eric Conner reference disclosed as preferred embodiments, compounds for use in forming a light emitting layer that corresponded directly to the subject matter claimed in the 648 patent. As a result, the person of ordinary skill in the art, as it would ordinarily do in looking at a prior reference, if recognizing the preferred embodiments and the fact that the reference teaches combining those compounds, a hole transporting compound and an electron transporting compound to produce a light emitting layer, would find it obvious to do so using the preferred embodiments disclosed and taught in the reference. Even the board's description of your argument below was that you said that what Eric Conner taught was that every single combination shown would result in the energy gap that Eric Conner wants. What we taught, what the presentation was on behalf of SFC was to identify in the Eric Conner reference, first of all, the compounds that Eric Conner described explicitly for use on the one hand as a hole transporting compound, which were the arylamine compounds having a condensed ring structure on the one hand. Then on the other, having a condensed ring structure including the polypropylene. Are you saying that the board's description of your argument is not accurate? I'm sorry? Your Honor, my difficulty is the board has more than one description of specific aspects of SFC's argument in different parts of its decision and that's why I'm struggling a little bit and I apologize. The overarching discussion and the primary discussion of the board's decision that we believe is pertinent here is the discussion, for example, at page 22 of its decision where it says that the Eric Conner reference discloses the arylamine, that the Eric Conner reference teaches the use of arylamine compounds having a condensed ring structure corresponding to formula one of its disclosure. In addition, it discloses electron transmitting compounds according to the structures of formulas five or six and then it additionally found, as discussed in that section of its opinion, that the compounds according to formulas one, five, and six of Eric Conner corresponded to the formulas of Roman numerals five, one, and two as claimed in the 648 patent. As it states, and those are findings that are not challenged in this appeal. As a result of those findings, what the board indicates in that section of its opinion, that it agrees with SFC's position that Eric Conner would at least suggest to a person of ordinary skill in the art that you could form an acceptable light-emitting layer. So you don't agree that the argument at least developed slightly differently over time? The argument... From what you originally put in the petition. What happened, your honor, is the board's decision also addresses rebuttal points to particular arguments made by the patent owner. As the board is entitled to do and as this court has said on numerous occasions, the board is not handcuffed to only address and use arguments or positions from its original decision declaring and instituting the IPR or a specific argument made by the petitioner. But in this case, the board did adopt the rationale presented by SFC, which was that the Eric Conner reference disclosed as preferred embodiments compounds that corresponded to the compounds claimed in the 648 patent for the same specific application as claimed in the 648 patent to use to form in a mixture, to use in a mixture, which was what they told the patent office was unique, in order to form an electroluminescent device. That was our position. That was the position outlined in the petition. And while the patent owner in this appeal suggests that had it known about one specific point, rebuttal point made by the board in its decision or another specific rebuttal point, that it might have offered evidence, declaration evidence, and it should have an opportunity to do some things of that nature. The fundamental fact is that the patent owner in this case, Itomitsu, did have the opportunity to present evidence in response to the petition. And after the board declared the IPR and instituted the IPR, Itomitsu had the chance to come forward with whatever declaration evidence it would have wanted to present, if it had any, to say, this is how a person of ordinary skill would have viewed it, the claimed compounds, if it were true that the compounds claimed don't have the desired relationship, energy gap relationship, but it didn't present any evidence in response. And there's no evidence in this record of this proceeding that the compounds that are claimed do not possess the desired energy gap relationship. Additional points made by the board are fundamentally correct when you say that, for example, at page 18, when it says, with respect to the argument generally by Itomitsu that it was necessary for petitioner to present evidence related to energy gap, the board made the fundamental observation that the claims don't recite any limitation with respect to energy gap between the compounds. And as Your Honor related with your questioning, the fact of the matter is, what's at issue here is the obviousness of the claimed subject matter, which are compounds, in the case, for example, of the electron transporting compounds. The compounds that are claimed, there are a handful of them for use as the whole transporting compound. Two of them are the anthracene derivatives. According to Araucana, they are formulas five and six. They are identical to the electron transporting compounds that are claimed in the 648 patent. And there's a handful of them. Araucana teaches you, after discussing the energy gap relationship in the background, it then goes on and tells you, and as the board found at page 22 of its decision, after discussing, after it discusses the energy gap relationship, then it goes on to tell you the preferred whole transporting compounds to use and the preferred energy transporting compounds to use by formula. And those formulas correspond, include compounds that correspond to the formulas claimed in the 648 patent for the identical application. So there's, this is a case where there is far more than substantial evidence in support of the findings that were made by the board in support of obviousness, that it would be obvious to combine these compounds as the Araucana reference teaches you. Now if there are additional questions, let me make one comment with respect to their arguments on comparative example four. They refer to comparative example four as having significance here. But the compound used, the compounds used in comparative example four, which did produce green light, as the board found, they do function as an electroluminescent device. The compounds in comparative example four do not involve the use of the preferred compounds taught by Aracane for use in making the electroluminescent device. The whole transporting compound, it's undisputed in this appeal, that the whole, that the whole having a condensed ring structure, as Aracane specifically teaches you to use, and as used and as claimed in the 648 patent. So as a result, when the patent owner argues based on comparative example four about the criticality of energy gap, things of that nature, whatever the person of ordinary skill in the art would see relative to comparative example four, would not in any way affect, and they haven't shown that it would affect, the person of skill in the art's use of the preferred embodiments that are specifically taught by Aracane for use in practicing the invention. Again, this is a case that is straightforward issues that were presented in the petition. There's no dispute that the material sections of the Aracane reference disclosing each of these embodiments were identified in the petition, in addition to disclosure teaching the use of these compounds, the whole transporting compounds, and these preferred electron transporting compounds in a mixture to form an electroluminescent device, and the board correspondingly made findings based on that. And the patent owner did not present any evidence in rebuttal to that. So this isn't a case that presents any legitimate circumstances or equitable circumstances to now have some form of do-over to go back and have some further proceedings, when in fact the patent owner had the opportunity to present the evidence it might have liked to, any evidence it would have liked to have presented on the issues, but did not, and then the board made findings consistent with the disclosure of the reference, holding the claims invalid as the reference clearly demonstrates it should have, it should have found. Evidence that again, or findings that are again, are supported by substantial evidence and are not disputed here. And with that, your honor, if you have any additional questions, I'd be glad to address them. Thank you. Thank you.  Your honors, I'd just like to note that the way that the case started is an allegation of anticipation was made, and another allegation of obviousness was made. And the allegation of obviousness was, here the reference discloses compounds, hole transport compounds, here the reference discloses electron transport compounds, and because of Merck, you can put all of them together. And in the wake of that, as the case proceeded, it was pointed out that this is not a case like Merck. In the Merck case, this court found specifically that the reference was telling you that all of these references could be used together. Any reference A could be used with any reference B. And that's not what's going on in this case. This reference is explicitly telling you that not all A's can be used with all B's. So now that the rule of Merck is not so applicable, instead of there being some alternative rationale, all these follow-on rationales are ways to cram this back into Merck, to make this another situation where one of ordinary skill in the art looking at the reference would say, well, you would put all of A together with all of B because of this other reason. You would put all of A together with all of B because of this other reason. But there's no evidence other than what was presented at the outset. The only evidence is, here's A, here's B, Merck, make it work. And because that fact pattern, the fact pattern of the present case, doesn't fit what happened in Merck, there's no additional evidence. There's no evidence that would indicate that you would choose this specific group to be put together with this specific group. The only evidence is that the reference itself, there's no other reference was presented. So when counsel says we had the opportunity to respond to arguments with declaration evidence when we filed our response, what are we responding to? So the issues in this case about whether or not all of the compounds satisfy the energy gap relationship, these issues were never presented. And I just want to reiterate, Your Honors, that to say that one of ordinary skill in the art looking at Eric Connay at the time of the present invention, without the benefit of our claims, would look at this reference and say it's leading to these comparative examples that are said to be problematic in practical use, or would have been led to the prior art ones that were deemed to be insufficient in terms of lifetime and efficiency, I think that's just not how one of ordinary skill in the art would have looked at these, at the Eric Connay reference in making a determination about obviousness. So, are there any questions? Thank you. Thank you, Your Honors. We thank both parties.